Larry O. Folks, #012142
Lisa S. Kass, #020859
Poli & Ball, P.L.C.
2999 North 44th Street, Suite 500
Phoenix, Arizona 85018
(602) 840-1400

Attorneys for Movant Bank One, NA, successor by merger to Bank One, Arizona N.A., a national banking association

POLI & BALL, P.L.C.
2999 NORTH 44TH STREET, SUITE 500
PHOENIX, ARIZONA 85018
(602) 840-1400

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

In re:

SWEETWATER CHURCH OF THE VALLEY, INC.,

Debtor,

No. 2-03-bk-22427

Chapter 11

**MOTION TO PROHIBIT OR CONDITION USE OF CASH COLLATERAL AND FOR SEQUESTRATION OF CASH COLLATERAL**

**Hearing Date:** **March 25, 2004**
**Time:** **11:00 a.m.**
**Location:** **2929 N. Central Ave, 10th Flr., Ctrm 4, Phoenix, AZ**

Bank One, NA, successor by merger to Bank One, Arizona, N.A., a national banking association ("Bank One"), a secured creditor of Sweetwater Church of the Valley, Inc., debtor in the above-captioned case ("Debtor" or "Sweetwater"), hereby respectfully requests that the Court enter an order prohibiting and conditioning the Debtor's use of Bank One's cash collateral and requiring the Debtor to sequester Bank One's cash collateral. In support of this Motion, Bank One states as follows:

## I. INTRODUCTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 101 et. seq.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Commencing on September 24, 1999 and continuing thereafter, Bank One loaned funds to the Debtor secured by a certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Financing Agreement (the "Deed of Trust").

4. The Debtor is currently in default under the subject promissory note and related loan documents described below by its failure to make certain required payments and by filing the instant bankruptcy proceeding.

5. On December 29, 2003 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code commencing this case.

POLI & BALL, P.L.C.
2999 NORTH 44TH STREET, SUITE 500
PHOENIX, ARIZONA 85018
(602) 840-1400

## II. DESCRIPTION OF BANK ONE'S LOAN DOCUMENTS AND COLLATERAL

6. On September 24, 1999, the Debtor executed and delivered to Bank One a Promissory Note in the amount of $100,000.00 ("Note #1"). A true and accurate copy of the Note is attached hereto as Exhibit 1 and is herein incorporated by this reference.

7. On September 24, 1999, David A. Foster, as Associate Pastor of Sweetwater, executed and delivered to Bank One a Deed of Trust that pledged certain real property (the "Real Property") and rents thereof (the "Rents") to secure payment for Note #1 and any extensions or renewals thereof. A true and accurate copy of the Deed of Trust is attached hereto as Exhibit 2 and is incorporated herein by this reference.

8. On October 18, 1999, Bank One recorded the Deed of Trust with the Maricopa County Recorder's Office as Instrument No. 99-0952882. By recording the Deed of Trust, Bank One obtained a valid, perfected and first priority lien upon the Real Property and Rents[1]. *See* Exhibit 2.

[1] Bank One notes there may be a mortgage between Sweetwater and Trust Management, Inc. ahead of Bank One's lien. However, Bank One is uncertain whether the mortgage remains valid.

9. On June 3, 2003, Glenn A. Foster and Dorothy Foster, as Pastor/President and Secretary of Sweetwater, executed and delivered to Bank One a Promissory Note in the amount of $95,161.56 (the "Note"). The Note replaced, extended and renewed Note #1. A true and accurate copy of the Note is attached hereto as Exhibit 3 and is incorporated herein by this reference.

10. An event of default under the Note consists of, among other things, Sweetwater's failure to make payments as they become due and owing or any other failure to comply with the terms and conditions of the Note. *See*, Exhibit 3.

11. As of December 2003, Sweetwater defaulted under the terms of the Note (the "Default") by, among other things, failing to make monthly payments as they have become due and owing and by filing the instant bankruptcy matter.

12. As of February 11, 2004, the unpaid monthly payments, late charges and accrued interest total $87,718.48.

13. The Real Property is located at 14240 North 43rd Avenue, Glendale, Arizona, 85306.

14. The Deed of Trust is valid, properly perfected and enforceable.

15. The Deed of Trust specifically provides, among other things, that Bank One's security interest in the Debtor's Real Property extends to, among other things, all tenant security deposits, and all proceeds, all rents, profits, revenues, royalties or other benefits of the Improvements.

16. As a result of the foregoing, Bank One hereby claims and asserts a first priority security interest in the Real Property and all Rents received by the Debtor and derived from and/or generated by the Real Property prior to and following the Petition Date.

POLI & BALL, P.L.C.
2999 NORTH 44TH STREET, SUITE 500
PHOENIX, ARIZONA 85018
(602) 840-1400

17. Further, the Rents received by the Debtor and derived from and/or generated by the Real Property prior to and following the Petition Date constitute Bank One's cash collateral and Bank One hereby objects to the Debtor's use of such cash collateral.

## III. ANALYSIS

Pursuant to 11 U.S.C. 363(a) "cash collateral" consists of:

> Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

18. Because the properly perfected and enforceable Deed of Trust grants Bank One a first priority lien in, among other things, all Rents, such funds constitute Bank One's cash collateral.

19. Section 363(c)(2) of the Bankruptcy Code, prohibits the Debtors' use of "cash collateral" unless either: (i) Bank One consents to such use; or (ii) "the court, after notice and a hearing, authorizes such use ... in accordance with the provisions" of section 363.

20. Further, 363(c)(4) of the Bankruptcy Code provides that, except as provided in section 363(c)(2), the Debtors are required to segregate and account for any cash collateral in their possession, custody or control.

21. Section 363(e) of the Bankruptcy Code provides, in pertinent part, that "at any time, on request of an entity that has an interest in property used ... or proposed to

POLI & BALL, P.L.C.
2999 NORTH 44TH STREET, SUITE 500
PHOENIX, ARIZONA 85018
(602) 840-1400

be used …, by the [Debtors], the court, with or without a hearing shall prohibit or condition such use … as is necessary to provide adequate protection of such interest".

22. Concurrently with the filing of this Motion, Bank One has filed its Notice of Non-Consent whereby Bank One informed the Debtor and the Court that it does not consent to the Debtor's use of its cash collateral.

23. Consequently, the Debtor is prohibited from using Bank One's cash collateral absent an order from this Court finding that Bank One's interests are adequately protected in compliance with Section 363(e) of the Bankruptcy Code. In addition, pursuant to Section 363(c)(4), the Debtor must immediately sequester and account for any and all Rents derived from the Real Property.

WHEREFORE, based on the foregoing, Bank One respectfully requests that the Court enter an order as follows:

A. Prohibiting or conditioning the Debtor's use of Bank One's cash collateral unless and until the Debtor provides adequate protection of Bank One's interests consistent with the requirements of 11 U.S.C. §§ 363(e);

B. Requiring the Debtor to either: (i) turnover the Rents to Bank One; or (ii) segregate and sequester the Rents in an interest bearing account for the benefit of Bank One;

C. Requiring the Debtor to account for any and all Rents it has received during the pendency of this case; and

D. For such other and further relief as the Court deems just and reasonable under the circumstances.

POLI & BALL, P.L.C.
2999 NORTH 44TH STREET, SUITE 500
PHOENIX, ARIZONA 85018
(602) 840-1400

DATED this 12th day of March, 2004.

POLI & BALL, P.L.C.

By /s/ Lisa S. Kass

Larry O. Folks
Lisa S. Kass
2999 North 44th Street, Suite 500
Phoenix, AZ 85018

*Attorneys for Bank One, NA, successor by merger to Bank One, Arizona, N.A., a national banking association*

POLI & BALL, P.L.C.
2999 NORTH 44TH STREET, SUITE 500
PHOENIX, ARIZONA 85018
(602) 840-1400

Copy of the foregoing mailed
this __nd day of March, 2004, to:

Dennis J. Wortman
Dennis J. Wortman, P.C.
2700 North Central Avenue, #850
Phoenix, AZ 85004
*Attorney for the Debtor*

Alisa C. Lacey
Osborn Maledon, P.A.
2929 North Central Avenue
Suite 2100
Phoenix, AZ 85102
*Attorney for ABS School Services, L.L.C.*

Larry Lee Watson
Office of the United States Trustee
Post Office Box 36170
Phoenix, AZ 85067-6170

List of Creditors Holding 20 Largest Unsecured Claims

By ___/s/ Lisa Angstadt

POLI & BALL, P.L.C.
2999 NORTH 44TH STREET, SUITE 500
PHOENIX, ARIZONA 85018
(602) 840-1400

# EXHIBIT "1"


040100011001

# PROMISSORY NOTE

60189838000052 6808

Borrower: THE SWEETWATER CHURCH OF THE VALLEY
14240 N. 43RD AVENUE
GLENDALE, AZ 85306

Lender: BANK ONE, ARIZONA, NA
CENTRAL PHOENIX AND WEST VALLEY BBC
P323
201 W INDIAN SCHOOL RD
PHOENIX, AZ 85013

Principal Amount: $100,000 00

Date of Note: September 24, 1999

PROMISE TO PAY. For value received, THE SWEETWATER CHURCH OF THE VALLEY ("Borrower") promises to pay to BANK ONE, ARIZONA, NA ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Thousand & 00/100 Dollars ($100,000 00) ("Total Principal Amount") or so much as may be outstanding, together with interest on the unpaid outstanding principal balance from the date advanced until paid in full.

PAYMENT. Borrower will pay this loan in accordance with the following payment schedule:

> Payments of accrued interest are due and payable monthly on the 25th day ofeach month until the Final Availability Date. Upon notice from Lender to Borrower, Lender may refuse to advance any additional amounts under this Note. The term "Final Availability Date" as used herein means the date of such notice, which shall be effective when deposited in the United States mail, first class postage prepaid, addressed to Borrower at Borrower's last known address. After the Final Availability Date, monthly payments shall be due in the aggregate amount of (A) equal payments of principal in the amount of one-thirty sixth (1/36) of the unpaid principal balance as of the Final Availability Date, plus (B) accrued interest, and shall be paid on the 25th day of each month until all amounts owing under this Note are paid in full. Notwithstanding language in the following paragraph to the contrary, and unless otherwise agreed to, in writing, or by applicable law, payments and other credits will be allocated to principal, interest, late charges, collection costs and other charges by Lender at its discretion.

Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year (366 during leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at the address designated by Lender from time to time in writing. If any payment of principal of or interest on this Note shall become due on a day which is not a Business Day, such payment shall be made on the next succeeding Business Day. As used herein, the term "Business Day" shall mean any day other than a Saturday, Sunday or any other day on which national banking associations are authorized to be closed. Unless otherwise agreed to, in writing, or otherwise required by applicable law, payments will be applied first to accrued, unpaid interest, then to principal, and any remaining amount to any unpaid collection costs, late charges and other charges, provided, however, upon delinquency or other default, Lender reserves the right to apply payments among principal, interest, late charges, collection costs and other charges at its discretion. The books and records of Lender shall be prima facie evidence of all outstanding principal of and accrued but unpaid interest on this Note. If this Note is governed by or is executed in connection with a loan agreement, this Note is subject to the terms and provisions thereof.

VARIABLE INTEREST RATE. The interest rate on this Note is subject to fluctuation based upon the Prime Rate of interest in effect from time to time (the "Index") (which rate may not be the lowest, best or most favorable rate of interest which Lender may charge on loans to its customers). "Prime Rate" shall mean the rate announced from time to time by Lender as its prime rate. Each change in the rate to be charged on this Note will become effective without notice on the first day of each month following the month in which the Index changes. Except as otherwise provided herein, the unpaid principal balance of this Note will accrue interest at a rate per annum which will from time to time be equal to the sum of the Index, plus 2.000%. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

PREPAYMENT. Borrower may pay without fee all or a portion of the principal amount owed hereunder earlier than it is due. All prepayments shall be applied to the indebtedness owing hereunder in such order and manner as Lender may from time to time determine in its sole discretion.

LATE CHARGE. If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $25.00, whichever is greater.

DEFAULT. Borrower will be in default if any of the following happens: (a) Borrower fails to make any payment of principal or interest when due under this Note or any other indebtedness owing now or hereafter by Borrower to Lender; (b) failure of Borrower or any other party to comply with or perform any term, obligation, covenant or condition contained in this Note or in any other promissory note, credit agreement, loan agreement, guaranty, security agreement, mortgage, deed of trust or any other instrument, agreement or document, whether now or hereafter existing, executed in connection with this Note (the Note and all such other instruments, agreements, and documents shall be collectively known herein as the "Related Documents"); (c) Any representation or statement made or furnished to Lender herein, in any of the Related Documents or in connection with any of the foregoing is false or misleading in any material respect; (d) Borrower or any other party liable for the payment of this Note, whether as maker, endorser, guarantor, surety or otherwise, becomes insolvent or bankrupt, has a receiver or trustee appointed for any part of its property, makes an assignment for the benefit of its creditors, or any proceeding is commenced either by any such party or against it under any bankruptcy or insolvency laws; (e) the occurrence of any event of default specified in any of the other Related Documents or in any other agreement now or hereafter arising between Borrower and Lender; (f) the occurrence of any event which permits the acceleration of the maturity of any indebtedness owing now or hereafter by Borrower to any third party; or (g) the liquidation, termination, dissolution, death or legal incapacity of Borrower or any other party liable for the payment of this Note, whether as maker, endorser, guarantor, surety, or otherwise.

LENDER'S RIGHTS. Upon default, Lender may at its option, without further notice or demand (i) declare the entire unpaid principal balance on this Note, all accrued unpaid interest and all other costs and expenses for which Borrower is responsible for under this Note and any other Related Document immediately due, (ii) refuse to advance any additional amounts under this Note, (iii) foreclose all liens securing payment hereof, (iv) pursue any other rights, remedies and recourses available to the Lender, including without limitation, any such rights, remedies or recourses under the Related Documents, at law or in equity, or (v) pursue any combination of the foregoing. Upon default, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law, do one or both of the following: (a) increase the variable interest rate on this Note to 5.000 percentage points over the Index, and (b) add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note (including any increased rate). The interest rate will not exceed the maximum rate permitted by applicable law. Lender may hire an attorney to help collect this Note if Borrower does not pay and Borrower will pay Lender's reasonable attorneys' fees and all other costs of collection, unless prohibited by applicable law. This Note has been delivered to Lender and accepted by Lender in the State of Arizona. Subject to the provisions on arbitration, this Note shall be governed by and construed in accordance with the laws of the State of Arizona without regard to any conflict of laws or provisions thereof.

PURPOSE. Borrower agrees that no advances under this Note shall be used for personal, family, or household purposes and that all advances hereunder shall be used solely for business, commercial, agricultural or other similar purposes.

JURY WAIVER. THE BORROWER AND LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG THE BORROWER AND LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS NOTE, ANY OTHER RELATED DOCUMENT, OR ANY RELATIONSHIP BETWEEN LENDER AND BORROWER. THIS PROVISION IS A MATERIAL INDUCEMENT TO LENDER TO PROVIDE THE FINANCING EVIDENCED BY THIS NOTE.

DISHONORED ITEM FEE. Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

RIGHT OF SETOFF. Unless a lien would be prohibited by law or would render a nontaxable account taxable, Borrower grants to Lender a contractual security interest in, and hereby assigns, conveys, delivers, pledges, and transfers to Lender all Borrower's right, title and interest in and to, Borrower's accounts with Lender (whether checking, savings, or any other account), including without limitation all accounts held jointly with someone else and all accounts Borrower may open in the future. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on this Note against any and all such accounts.

LINE OF CREDIT. This Note evidences a revolving line of credit. Borrower may request advances and make payments hereunder from time to time, provided that it is understood and agreed that the aggregate principal amount outstanding from time to time hereunder shall not at any time exceed the Total Principal Amount. The unpaid principal balance of this Note shall increase and decrease with each new advance or payment hereunder, as the case may be. Subject to the terms hereof, Borrower may borrow, repay and reborrow hereunder. Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (a) advanced in accordance with the instructions of an authorized person or (b) credited to any of Borrower's accounts with Lender.

ARBITRATION. Lender and Borrower agree that upon the written demand of either party, whether made before or after the institution of any legal proceedings, but prior to the rendering of any judgment in that proceeding, all disputes, claims and controversies between them, whether individual, joint, or class in nature, arising from this Note, any Related Document or otherwise, including without limitation contract disputes and tort claims, shall be resolved by binding arbitration pursuant to the Commercial Rules of the American Arbitration Association ("AAA") Any arbitration proceeding held pursuant to this arbitration provision shall be conducted in the city nearest the Borrower's address having an AAA regional office, or at any other place selected by mutual agreement of the parties No act to take or dispose of any collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This arbitration provision shall not limit the right of either party during any dispute, claim or controversy to seek, use, and employ ancillary, or preliminary rights and/or remedies, judicial or otherwise, for the purposes of realizing upon, preserving, protecting, foreclosing upon or proceeding under forcible entry and detainer for possession of, any real or personal property, and any such action shall not be deemed an election of remedies Such remedies include, without limitation, obtaining injunctive relief or a temporary restraining order, invoking a power of sale under any deed of trust or mortgage, obtaining a writ of attachment or imposition of a receivership, or exercising any rights relating to personal property, including exercising the right of set-off or taking or disposing of such property with or without judicial process pursuant to the Uniform Commercial Code Any disputes, claims, or controversies concerning the lawfulness or reasonableness of an act, or exercise of any right or remedy, concerning any collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral, shall also be arbitrated; provided, however that no arbitrator shall have the right or the power to enjoin or restrain any act of either party Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction The statute of limitations, estoppel, waiver, laches and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of any action for these purposes The Federal Arbitration Act (Title 9 of the United States Code) shall apply to the construction, interpretation, and enforcement of this arbitration provision.

STOP PAYMENT CHARGE. A stop payment charge of $25 00 will be assessed and charged directly to the Account for each check written against the Account upon which a stop payment order is issued

METHODS OF ADVANCEMENT. The principal amount of this Note may be advanced by means including but not limited to, Visa card(s), check(s), telephone transfer/access, and may be repaid and readvanced in full or part until the Final Availability Date Borrower assumes liability for, and agrees to pay for, purchases and cash advances made by Borrower or anyone authorized by Borrower, through use of any Visa card issued at Borrower's request or any other means, and agrees to pay, at such place as Lender designates, all extensions of credit and charges in accordance with statement billings and the interest, fees and other charges as same may be modified from time to time by Lender. Borrower is bound and liable for repayment of the entire Note, regardless of who received the benefit of the transaction(s) or to whom any advance of credit was made Borrower may be liable for any loss, theft or unauthorized use of any Visa card issued at Borrower's request

ACCOUNT. The term "Account" as used herein means the line of credit established pursuant to this Note.

ANNUAL FEE. A non-refundable Annual Fee of $250.00 may be charged to your Account at the following time: The Annual Fee is payable in advance for each year, and may be charged to the Account annually No refund of any part of the Annual Fee will be made in the event of cancellation of the Account for any reason

OVERLIMIT FEE. We may charge you a fee in the event your Account balance exceeds your Total Principal Amount on the last day of any billing period The amount of this charge is $25 00

ADDITIONAL EXPENSES. Expenses paid by Lender in processing and/or filing any security documents executed in conjunction with this Note may be charged directly to the undersigned's depository account ten (10) days after Lender notifies the undersigned of said amount.

MODIFICATION. The fees and time frames set forth above may be modified from time to time by Lender without prior written notice to the undersigned

ADDITIONAL DEFAULT. Borrower will be in Default if the following happens: (h) Borrower fails to furnish Lender within thirty (30) days after written request by Lender, current financial statements, including income tax returns, in form satisfactory to Lender or to permit inspection of any of Borrower's books and records.

ADDITIONAL PROVISION REGARDING LATE CHARGES. In the "Late Charge" provision set forth above, the following language is hereby added after the word "greater": "up to the maximum amount of Two Hundred Fifty Dollars ($250 00) per late charge".

GENERAL PROVISIONS. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this Note, or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this Note without the consent of or notice to anyone other than the party with whom the modification is made

EFFECTIVE RATE. Borrower agrees to an effective rate of interest that is the rate specified in this Note plus any additional rate resulting from any other charges in the nature of interest paid or to be paid in connection with this Note.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THE NOTE.

BORROWER:

THE SWEETWATER CHURCH OF THE VALLEY

By: ______________________
DAVID A. FOSTER, Associate Pastor

Variable Rate, Line of Credit. LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.25a (c) 1999 CFI ProServices, Inc. All rights reserved. [AZ-D20 E3.25 F3.25 P3.25 17932302.LN C33.OVL]

# EXHIBIT "2"


OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL

99-0952882 10/18/99 11:03

RECORDATION REQUESTED BY:
BANK ONE, ARIZONA, NA
P323
201 W INDIAN SCHOOL RD
PHOENIX, AZ 85013

WHEN RECORDED MAIL TO:
BANK ONE, ARIZONA, NA
~~P323~~ Box 4190
~~201 W INDIAN SCHOOL RD~~
~~PHOENIX, AZ 85013~~
Mesa AZ 85211

SEND TAX NOTICES TO:
BANK ONE, ARIZONA, NA
P323
201 W INDIAN SCHOOL RD
PHOENIX, AZ 85013

1770495+1 6018983800052680B
SWEETWATER CHURCH OF THE VALLEY, INC.
DEED OF TRUST / MORTGAGE

FOR RECORDER'S USE ONLY

17

BANK ONE.

# DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FINANCING STATEMENT

THIS DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FINANCING STATEMENT IS MADE AS OF SEPTEMBER 24, 1999, by THE SWEETWATER CHURCH OF THE VALLEY, whose address is 14240 N. 43RD AVENUE, GLENDALE, AZ 85306 (referred to below as "Trustor") for the benefit of BANK ONE, ARIZONA, NA, whose address is P323, 201 W INDIAN SCHOOL RD, PHOENIX, AZ 85013 (referred to below sometimes as "Lender" and sometimes as "Beneficiary") and BANK ONE, ARIZONA, NA, whose address is 201 NORTH CENTRAL AVENUE, PHOENIX, AZ 85004 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor conveys to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all Improvements (as defined below); all tenant security deposits, utility deposits and all proceeds (including without limitation premium refunds) of each policy of insurance relating to any of the Improvements, the Personal Property or the Real Property; all rents, issues, profits, revenues, royalties or other benefits of the Improvements, the Personal Property or the Real Property; all easements, rights of way, and appurtenances; all water and water rights flowing through, belonging or in anyway appertaining to the Real Property, and all of Trustor's water rights that are personal property under Arizona law, including without limitation all type 2 nonirrigation grandfathered rights (if applicable), all irrigation rights, all ditch rights, rights to irrigation district stock, all contracts for effluent, all contracts for Central Arizona Project water, and all other contractual rights to water, and together with all rights (but none of the duties) of Trustor as declarant under any presently recorded declaration of covenants, conditions and restrictions affecting real property; and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, located in MARICOPA County, State of Arizona (the "Real Property"):

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES INTENDED

The Real Property or its address is commonly known as 14240 N. 43RD AVENUE, GLENDALE, AZ 85306.

DEFINITIONS. The following words shall have the following meanings when used in this Deed of Trust. Terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

Beneficiary. The word "Beneficiary" means BANK ONE, ARIZONA, NA, its successors and assigns. BANK ONE, ARIZONA, NA also is referred to as "Lender" in this Deed of Trust.

Deed of Trust. The words "Deed of Trust" mean this Deed of Trust, Assignment of Leases and Rents, Security Agreement and Financing Statement for the benefit of Lender and Trustee.

Guarantor. The word "Guarantor" means and includes without limitation, any and all guarantors, sureties, and accommodation parties in connection with the Indebtedness.

Improvements. The word "Improvements" means and includes without limitation all existing and future improvements, fixtures, buildings, structures, mobile homes affixed on the Real Property, facilities, additions,

replacements and other construction on the Real Property

Indebtedness. The word "Indebtedness" means the indebtedness evidenced by the Note, including all principal and accrued interest thereon, together with all other liabilities, costs and expenses for which Grantor is responsible under this Deed of Trust or under any of the Related Documents. In addition, the word "Indebtedness" includes all other obligations, debts and liabilities, plus any accrued interest thereon, owing by Grantor, or any one or more of them, to Beneficiary of any kind or character, now existing or hereafter arising, as well as all present and future claims by Beneficiary against Grantor, or any one or more of them, and all renewals, extensions, modifications, substitutions and rearrangements of any of the foregoing; whether such Indebtedness arises by note, draft, acceptance, guaranty, endorsement, letter of credit, assignment, overdraft, indemnity agreement or otherwise; whether such Indebtedness is voluntary or involuntary, due or not due, direct or indirect, absolute or contingent, liquidated or unliquidated; whether Grantor may be liable individually or jointly with others; whether Grantor may be liable primarily or secondarily or as debtor, maker, comaker, drawer, endorser, guarantor, surety, accommodation party or otherwise

Leases. The word "Leases" means all right, title and interest of Grantor in and to all leases relating to the Real Property, together with all modifications, extensions and guaranties thereof, presently existing or hereafter arising

Lender. The word "Lender" means BANK ONE, ARIZONA, NA, its successors and assigns.

Note. The word "Note" means the promissory note dated September 24, 1999, in the principal amount of $100,000.00 from Trustor to Lender, together with all renewals, extensions, and modifications, refinancings, and substitutions for such promissory note. The Note evidences a revolving line of credit.

Personal Property. The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to, or located on, the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

Property. The word "Property" means collectively the Real Property and the Personal Property.

Real Property. The words "Real Property" mean the property, interests and rights described above in the "Conveyance and Grant" section.

Related Documents. The words "Related Documents" mean and include without limitation the Note and all credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Note.

Rents. The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property, including, without limitation, all Rents from all Leases.

Trustee. The word "Trustee" means BANK ONE, ARIZONA, NA and any substitute or successor trustees.

Trustor. The word "Trustor" means any and all persons and entities executing this Deed of Trust, including without limitation all Trustors named above.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF LEASES AND RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Trustor may (a) remain in possession and control of the Property, (b) use, operate or manage the Property, and (c) collect any Rents from the Property.

**Duty to Maintain.** Trustor shall maintain the Property in condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value. Grantor shall also observe and comply with all conditions and requirements (if any) necessary to preserve and extend all rights, easements, licenses, permits (including, without limitation, zoning variations and any non-conforming uses and structures), privileges, franchises and concessions applicable to the Real Property or contracted for in connection with any present or future use of the Real Property.

**Hazardous Substances.** The terms "hazardous waste," "hazardous substance," "disposal," "release," and "threatened release," as used in this Deed of Trust, shall have the same meanings as set forth in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 49 U.S.C. Section 6901, et seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. The terms "hazardous waste" and "hazardous substance" shall also include, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos. Except as previously disclosed to and acknowledged by Lender in writing, Trustor represents and warrants to Lender that: (a) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance by any person on, under, about or from the Property; (b) Trustor has no knowledge of, or reason to believe that there has been, (i) any use, generation, manufacture, storage, treatment, disposal, release, or threatened release of any hazardous waste or substance on, under, about or from the Property by any prior owners or occupants of the Property or (ii) any actual or threatened litigation or claims of any kind by any person relating to such matters; (c) Neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of, or release any hazardous waste or substance on, under, about or from

the Property and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation those laws, regulations, and ordinances described above; and (d) There are and have been no underground storage tanks on or under the Real Property and all underground storage tanks located on or under the Real Property have been and shall be maintained in accordance with all applicable federal, state and local laws regulations and ordinances, including, without limitation, those laws, regulations and ordinances described above. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Beneficiary, at its option, but without obligation to do so, may correct any condition violating any applicable environmental law affecting the Property, and in doing so shall conclusively be deemed to be acting reasonably and for the purpose of protecting the value of its collateral, and all costs of correcting a condition or violation shall be payable to Beneficiary by Trustor as provided in the Expenditures by Lender section of this Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for hazardous waste and hazardous substances Trustor hereby (a) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the properties. The provisions of this section of the Deed of Trust, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

Nuisance, Waste. Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of Lender.

Alteration of Improvements. Trustor shall not make any material alterations in the Improvements (including, without limitation demolish or remove any Improvements from the Real Property) without the prior written consent of Lender. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

Lender's Right to Enter. Lender and its agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

Compliance with Governmental Requirements. Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

Duty to Protect. Trustor agrees neither to abandon nor leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property

ASSIGNMENT OF LEASES AND RENTS.

Assignment of Leases. Grantor hereby assigns to Beneficiary all Leases including all of Grantor's rights and power to modify, terminate, accept, surrender or waive or release tenants from performance or observation of any obligations or conditions of the Leases. Prior to an Event of Default, Grantor shall have the right, without joinder of Beneficiary, to enforce the Leases, unless Beneficiary directs otherwise.

Assignment of Rents. Grantor does hereby absolutely and unconditionally assign, transfer and set over to Beneficiary all Rents, subject, however, to a license hereby granted by Beneficiary to Grantor to collect and receive all of the Rents (such license evidenced by Beneficiary's acceptance hereof) and to the terms and conditions hereof; provided, however, upon the occurrence of an Event of Default hereunder or upon the occurrence of any event or circumstance which with the lapse of time or the giving of notice or both would constitute an Event of Default hereunder, such license shall automatically and immediately terminate and Grantor shall hold all Rents paid to Grantor thereafter in trust for the use and benefit of Beneficiary and Beneficiary shall have the right, power and authority, whether or not it takes possession of the Property, to seek enforcement of any such lease, contract or bond and to demand, collect, receive, sue for and recover in its own name any and all of the above described amounts assigned hereby and to apply the sum(s) collected, first to the payment of expenses incident to the collection of the same, and the balance to the payment of the Indebtedness; provided further, however, that Beneficiary shall not be deemed to have taken possession of the Property except on the exercise of its option to do so, evidenced by its demand and overt act for such purpose. It shall not be necessary for Beneficiary to institute any type of legal proceedings or take any other action whatsoever to enforce the assignment provisions contained herein. Notwithstanding anything contained herein or in any of the other Related Documents to the contrary, the assignment in this Paragraph is an absolute, unconditional and presently effective assignment and not merely a security interest.

Right to Rely. Grantor hereby irrevocably authorizes and directs the tenants under the Leases to pay Rents to Beneficiary upon written demand by Beneficiary without further consent of Grantor, and the tenants may rely upon any written statement delivered by Beneficiary to the tenants. Any such payment to Beneficiary shall constitute payment to Grantor under the Leases. The provisions this Paragraph are intended solely for the benefit of the tenants and shall never inure to the benefit of Grantor or any person claiming through or under Grantor, other than a tenant who has not received such notice. The Assignment of Rents set forth herein is not contingent upon any notice or demand by Beneficiary to the tenants.

Warranties Concerning Leases and Rents. Grantor represents and warrants that: (a) Grantor has good title to the Leases and Rents and authority to assign them, and no other person or entity has any right, title or interest therein; (b) all existing Leases are valid, unmodified and in full force and effect, except as indicated herein, and no default exists thereunder; (c) unless otherwise provided herein, no Rents have been or will be assigned, mortgaged or pledged; (d) no Rents have been or will be waived, released, discounted or compromised; and (e) Grantor has not collected Rents more than one (1) month in advance.

Grantor's Covenants of Performance. Grantor covenants to: (a) perform all of its obligations under the Leases; (b) give immediate notice to Beneficiary of any notice Grantor receives from any tenant or subtenant under any Leases, specifying any claimed default by any party under such Leases; (c) enforce the tenant's obligations under the Leases; (d) defend, at Grantor's expense, any proceeding pertaining to the Leases, including, if Beneficiary so requests, any such proceeding to which Beneficiary is a party; (e) neither create nor permit any encumbrance upon its interest as lessor of the Leases except as provided hereunder; and (f) deliver to Beneficiary upon its request executed originals of all Leases and copies of all records relating thereto.

Prior Approval for Actions Affecting Leases. Grantor shall not, without the prior written consent of

Beneficiary: (a) receive or collect Rents more than one month in advance; (b) encumber or assign future Rents or Leases; (c) waive or release any obligation of any tenant under the Leases; (d) cancel, terminate or materially modify any of the Leases, except upon default by the tenant thereunder; or (e) enter into any Leases after the date hereof.

Beneficiary in Possession. Beneficiary's acceptance of this assignment shall not, prior to entry upon and taking possession of the Property by Beneficiary, be deemed to constitute Beneficiary a "mortgagee in possession," nor obligate Beneficiary to appear in or defend any proceedings relating to any of the Leases or to the Property, take any action hereunder, expend any money, incur any expenses or perform any obligation or liability under the Leases, or assume any obligation for any deposits delivered to Grantor by any tenant and not delivered to Beneficiary. Beneficiary shall not be liable for any injury or damage to any person or property in or about the Property.

DUE ON SALE - CONSENT BY LENDER. Lender may, at its option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without the Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest therein; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, instalment sale contract, land contract, contract for deed, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of Real Property interest. If any Trustor is a corporation (unless such Grantor's stock is publicly traded), partnership or limited liability company, "sale or transfer" also includes any change in ownership without the prior written consent of Beneficiary of the voting stock, partnership interests or limited liability company interests, as the case may be, of Trustor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Arizona law.

TAXES AND LIENS.

Payment. Grantor shall pay when due all taxes, assessments, water charges and sewer service charges levied or assessed against the Property, or any part thereof, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free and clear of all liens, except for liens of taxes and assessments not due and except as otherwise provided herein.

Right To Contest. Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

Evidence of Payment. Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

Notice of Construction. Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

PROPERTY DAMAGE INSURANCE.

Maintenance of Insurance. Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive public liability insurance for injuries to persons (including death) and property damage or loss of use, and such other insurance as may be required by Lender. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property at any time become located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance for the full unpaid principal balance of the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

Application of Proceeds. Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at its election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear. Beneficiary is hereby appointed attorney-in-fact for Grantor, such power being coupled with an interest, to make proof of loss or damage if Grantor fails to do so within fifteen (15) days, to receive any sums collected under such policies and, in the event any insurance losses are paid by check, draft or other instrument payable to Grantor, Beneficiary may endorse Grantor's name thereof and take such further steps on behalf of Grantor as are necessary to realize on any such instrument. Application of insurance proceeds to the payment of the Indebtedness will not extend, postpone or waive any payments otherwise due, or change the amount of such payment to be made and proceeds may be applied in such order and in such amounts as Beneficiary may elect.

Unexpired Insurance at Sale. Any unexpired insurance shall inure to the benefit of, and pass to, the purchaser of the Property covered by this Deed of Trust at any trustee's sale or other sale held under the provisions of this Deed of Trust, or at any foreclosure sale of such Property.

Trustor's Report on Insurance. Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (a) the name of the insurer; (b) the risks insured; (c) the amount of the policy; (d) the property insured, the then current replacement value of such property, and the manner of determining that value; and (e) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property

TAX AND INSURANCE RESERVES. Subject to any limitations set by applicable law. Lender may require Trustor to maintain with Lender reserves for payment of annual taxes, assessments. and insurance premiums, which reserves shall be created by advance payment or monthly payments of a sum estimated by Lender to be sufficient to produce amounts at least equal to the taxes, assessments, and insurance premiums to be paid. The reserve funds shall be held by Lender as a general deposit from Trustor, which Lender may satisfy by payment of the taxes, assessments, and insurance premiums required to be paid by Trustor as they become due. Lender shall have the right to draw upon the reserve funds to pay such items, and Lender shall not be required to determine the validity or accuracy of any item before paying it. Nothing in the Deed of Trust shall be construed as requiring Lender to advance other monies for such purposes. and Lender shall not incur any liability for anything it may do or omit to do with respect to the reserve account. Subject to any limitations set by applicable law, if the reserve funds disclose a shortage or deficiency, Trustor shall pay such shortage or deficiency as required by Lender. All amounts in the reserve account are hereby pledged to further secure the Indebtedness, and Lender is hereby authorized to withdraw and apply such amounts on the Indebtedness upon the occurrence of an Event of Default Lender shall not be required to pay any interest or earnings on the reserve funds unless required by law or agreed to by Lender in writing. Lender does not hold the reserve funds in trust for Trustor. and Lender is not Trustor's agent for payment of the taxes and assessments required to be paid by Trustor.

EXPENDITURES BY LENDER. If Trustor fails to comply with any provision of this Deed of Trust. or if any action or proceeding is commenced that would materially affect Lender's interests in the Property, Lender on Trustor's behalf may, but shall not be required to, take any action that Lender deems appropriate to the extent permitted by applicable law. Any amount that Lender expends in so doing will bear interest at the rate provided for in the Note from the date incurred or paid by Lender to the date of repayment by Trustor All such expenses will be payable on demand and shall be secured by this instrument. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of the default and shall be exercisable by Lender to the extent permitted by applicable law. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

WARRANTY; DEFENSE OF TITLE.

Title. Trustor warrants that: (a) Trustor holds good and marketable title of record to the Real Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the legal description of the Real Property set forth herein or attached hereto or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender. or have otherwise been previously disclosed to and accepted by Lender in writing in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

Defense of Title. Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust. Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

No Other Liens. Grantor will not, without the prior written consent of Lender, create, place, or permit to be created or placed, or through any act or failure to act, acquiesce in the placing of, or allow to remain, any deed of trust, voluntary or involuntary lien, whether statutory, constitutional or contractual (except for a lien for ad valorem taxes on the Real Property which are not delinquent), security interest, encumbrance or charge, against or covering the Property, or any part thereof, other than as permitted herein, regardless if same are expressly or otherwise subordinate to the lien or security interest created in this Deed of Trust, and should any of the foregoing become attached hereafter in any manner to any part of the Property without the prior written consent of Lender. Grantor will cause the same to be promptly discharged and released.

Compliance With Laws. Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Solvency of Grantor. As of the date hereof, and after giving effect to this document and the completion of all other transactions contemplated by Grantor at the time of the execution hereof, (i) Grantor is and will be solvent, (ii) the fair saleable value of Grantor's assets exceeds and will continue to exceed Grantor's liabilities (both fixed and contingent), (iii) Grantor is paying and will continue to be able to pay its debts as they mature, and (iv) if Grantor is not an individual, Grantor has and will have sufficient capital to carry on Grantor's businesses and all businesses in which Grantor is about to engage.

CONDEMNATION.

Application of Net Proceeds. If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its discretion require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

Proceedings. If any proceeding in condemnation is filed, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to defend the action and obtain the award. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments as may be requested by it from time to time to permit such participation.

Attorney-In-Fact. Beneficiary is hereby authorized, in the name of Grantor, to execute and deliver valid acquittances for condemnation awards paid to Grantor. Beneficiary is hereby irrevocably appointed Grantor's attorney-in-fact, such power being coupled with an interest. to receive any sums due in connection with such condemnation, and, in the event any such proceeds are paid by check, draft or other instrument payable to Grantor, Beneficiary may endorse Grantor's name thereon and take such further steps on behalf of Grantor as are necessary to realize on any such instrument. Any application of condemnation proceeds to the payment of the Indebtedness will not extend, postpone or waive any payments otherwise due or change the amount of such payment to be made. and the proceeds may be applied in such order and in such amounts as Beneficiary may elect.

IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES The following provisions relating to governmental taxes. fees and charges are a part of this Deed of Trust:

Current Taxes, Fees and Charges. Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of

Trust.

Taxes. The following shall constitute taxes to which this section applies: (a) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (b) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (c) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (d) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor

Subsequent Taxes. If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default (as defined below), and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (a) pays the tax before it becomes delinquent, or (b) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

SECURITY AGREEMENT; FINANCING STATEMENTS

Security Agreement. Grantor hereby grants to Beneficiary a security interest in all Personal Property and Rents to secure payment of the Indebtedness This instrument shall constitute a security agreement and a financing statement, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time

Security Interest. Upon request by Lender, Trustor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records. Lender may, at any time and without further authorization from Trustor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall assemble the Personal Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

Addresses. The mailing addresses of Trustor (debtor) and Lender (secured party), from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code). are as stated on the first page of this Deed of Trust

FURTHER ASSURANCES; ATTORNEY-IN-FACT.

Further Assurances. At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (a) the obligations of Trustor under the Note, this Deed of Trust, and the other Related Documents, and (b) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or agreed to the contrary by Lender in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with recording. perfecting or continuing the lien created hereby and the matters referred to in this paragraph.

Attorney-in-Fact. If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing. delivering, filing, recording, and doing all other things as may be necessary or desirable. in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

Lien Not Released. The lien, security interest and other security rights of Lender hereunder shall not be impaired by any indulgence, moratorium or release granted by Lender, including but not limited to, the following: (a) any renewal, extension, increase or modification of any of the Indebtedness; (b) any surrender, compromise, release, renewal, extension, exchange or substitution granted in respect of any of the Property; (c) any release or indulgence granted to any endorser, guarantor or surety of any of the Indebtedness; (d) any release of any other collateral for any of the Indebtedness; (e) any acquisition of any additional collateral for any of the Indebtedness; (f) any consent to the granting of any easement with respect to the Real Property; and (g) any waiver or failure to exercise any right, power or remedy granted herein. by law or in any of the Related Documents

FULL PERFORMANCE. If Trustor pays all the Indebtedness when due, terminates the line of credit, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust. Lender shall execute and deliver to Trustee a request for full reconveyance without warranty and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property Any reconveyance fee required by law shall be paid by Trustor, if permitted by applicable law

DEFAULT. Each of the following, at the option of Lender, shall constitute an event of default ("Event of Default") under this Deed of Trust:

Default on Indebtedness. Failure of Trustor to make any payment when due on the Indebtedness.

Other Defaults. Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note, in any of the other Related Documents or in any other agreement now existing or herefter arising between Beneficiary and Grantor.

False Statements. Any warranty, representation or statement made or furnished to Lender under this Deed of Trust, the Note or any of the other Related Documents is false or misleading in any material respect.

Default to Third Party. The occurrence of any event which permits the acceleration of the maturity of any indebtedness owing by Grantor or any Guarantor to any third party under any agreement or undertaking.

Bankruptcy or Insolvency. If the Grantor or any Guarantor: (i) becomes insolvent, or makes a transfer in fraud of creditors, or makes an assignment for the benefit of creditors, or admits in writing its inability to pay its debts as they become due; (ii) generally is not paying its debts as such debts become due; (iii) has a receiver, trustee or custodian appointed for, or take possession of, all or substantially all of the assets of such party or any of the Collateral, either in a proceeding brought by such party or in a proceeding brought against such party and such appointment is not discharged or such possession is not terminated within sixty (60) days after the effective date thereof or such party consents to or acquiesces in such appointment or possession; (iv) files a petition for relief under the United States Bankruptcy Code or any other present or future federal or state insolvency, bankruptcy or similar laws (all of the foregoing hereinafter collectively called "Applicable Bankruptcy Law") or any involuntary petition for relief is filed against such party under any Applicable Bankruptcy Law and such involuntary petition is not dismissed within sixty (60) days after the filing thereof, or an order for relief naming such party is entered under the any Applicable Bankruptcy Law, or any composition, rearrangement, extension, reorganization or other relief of debtors now or hereafter existing is requested or consented to by such party; (v) fails to have discharged within a period of sixty (60) days any attachment, sequestration or similar writ levied upon any property of such party; or (vi) fails to pay within thirty (30) days any final money judgment against such party

**Liquidation, Death and Related Events.** If Grantor or any Guarantor is an entity, the liquidation, dissolution, merger or consolidation of any such entity or, if any of such parties is an individual, the death or legal incapacity of any such individual

**Abandonment.** Grantor abandons all or a portion of the Property

**Action by Other Lienholder.** The holder of any lien or security interest on the Property (without hereby implying the consent of Beneficiary to the existence or creation of any such lien or security interest) declares a default thereunder or institutes foreclosure or other proceedings for the enforcement of its remedies thereunder.

**Destruction of Property.** The Property is so demolished, destroyed or damaged that, in the judgment of Beneficiary, it cannot be restored or rebuilt with available funds to a profitable condition within a reasonable period of time.

**Condemnation.** So much of the Property is taken in condemnation, or sold in lieu of condemnation, or the Property is so diminished in value due to any injury or damage to the Property, that the remainder thereof cannot, in the judgment of Beneficiary, continue to be operated profitably for the purpose for which it was being used immediately prior to such taking, sale or diminution

**Transfer of Real Property and Improvements.** Any transfer of any or all of the Real Property and/or Improvements, without the prior consent of Beneficiary in its absolute and sole discretion.

**Violation of Law.** Any of the Real Property and/or Improvements, or any use of any of the Real Property and/or Improvements violates any law, ordinance, regulation or rule (Federal, state or local).

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Trustee or Lender, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Trustor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Trustor would be required to pay.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law. To the extent permitted by law, Trustor shall be and remain liable for any deficiency remaining after sale, either pursuant to the power of sale or judicial proceedings.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (a) pay a reasonable rental for the use of the Property, or (b) vacate the Property immediately upon the demand of Lender

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or by law or in equity or by other rights and remedies afforded by Arizona law

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Insurance Policies.** Beneficiary shall have the right upon an Event of Default, but not the obligation, to assign all of Trustor's right, title and interest in and to all policies of insurance on the Property and any unearned premiums paid on such insurance to any receiver or any purchaser of the Property at a foreclosure sale, and Trustor hereby appoints Beneficiary as attorney in fact to assign and transfer such policies.

**Waiver; Election of Remedies.** A waiver by any party of a breach of a provision of this Deed of Trust shall not constitute a waiver of or prejudice the party's rights otherwise to demand strict compliance with that provision or any other provision. Election by Lender to pursue any remedy provided in this Deed of Trust, the Note, in any Related Document, or provided by law shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust after failure of Trustor to perform shall not affect Lender's right to declare a default and to exercise any of its remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover reasonable attorneys' fees. Whether or not any court action is involved, all reasonable expenses incurred by Lender which in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees whether or not there is a lawsuit, including reasonable attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, enviromental reports, appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE**

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of MARICOPA County, Arizona. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**NOTICES TO TRUSTOR AND OTHER PARTIES.** Any notice under this Deed of Trust shall be in writing and shall be effective when actually delivered, or when deposited with a nationally recognized overnight courier, or, if mailed, shall be deemed effective three (3) days after deposited in the United States mail first class, certified or registered mail, postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. For notice purposes, Trustor agrees to keep Lender and Trustee informed at all times of Trustor's current address.

**MISCELLANEOUS PROVISIONS.**

**Amendments.** This Deed of Trust, together with all Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Financial Statements.** As long as the Indebtedness remains unpaid in whole or in part, Grantor agrees to furnish Beneficiary upon request by Beneficiary, financial statements concerning Grantor, including, without limitation, such information with respect to the Real Property, at such time and in such form and detail as reasonably requested by Beneficiary.

**Appraisals.** Grantor agrees that Beneficiary may obtain from time to time in Beneficiary's sole discretion, an appraisal or re-appraisal of the Real Property and Grantor shall be responsible, and shall promptly reimburse Beneficiary for all costs associated therewith, including without limitation, the cost of any appraisal reviews; provided, however, Grantor will be obligated to pay for the cost of any such appraisals or re-appraisals no more than one (1) time in any twelve (12) month period.

**Indemnity.** Grantor hereby agrees to indemnify, defend and hold harmless Beneficiary, and its officers, directors, shareholders, employees, agents and representatives (each an "Indemnified Person") from and against any and all liabilities, obligations, claims, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature (collectively, the "Claims") which may be imposed on, incurred by or asserted against, any Indemnified Person (whether or not caused by any Indemnified Person's sole, concurrent or contributory negligence) arising in connection with the Related Documents, the Indebtedness or the Property (including, without limitation, the enforcement of the Related Documents and the defense of any Indemnified Person's action and/or inaction in connection with the Related Documents), except to the limited extent that the Claims against the Indemnified Person are proximately caused by such Indemnified Person's gross negligence or willful misconduct. The indemnification provided for in this Section shall survive the termination of this instrument and shall extend and continue to benefit each individual or entity who is or has any time been an Indemnified Person hereunder.

**Applicable Law.** This Agreement has been delivered to Lender and accepted by Lender in the State of Arizona. Subject to the provisions on arbitration in any Related Document, this Agreement shall be governed by and construed in accordance with the laws of the State of Arizona without regard to any conflict of laws or provisions thereof.

**JURY WAIVER.** THE UNDERSIGNED AND LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG THE UNDERSIGNED AND LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS DOCUMENT, AND ANY OTHER RELATED DOCUMENT, OR ANY RELATIONSHIP BETWEEN LENDER AND THE BORROWER. THIS PROVISION IS A MATERIAL INDUCEMENT TO LENDER TO PROVIDE THE FINANCING DESCRIBED HEREIN OR IN THE OTHER RELATED DOCUMENTS.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Deed of Trust in all other respects shall remain valid and enforceable.

**Successors and Assigns.** Subject to the limitations stated in this Deed of Trust on transfer of Trustor's Interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or

liability under the Indebtedness.

Time Is of the Essence. Time is of the essence in the performance of this Deed of Trust.

Waivers and Consents. Lender shall not be deemed to have waived any rights under this Deed of Trust (or under the Related Documents) unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Deed of Trust shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or any of Trustor's obligations as to any future transactions. Whenever consent by Lender is required in this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required.

Waiver of Homestead Exemption. Trustor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Arizona as to all Indebtedness secured by this Deed of Trust.

EACH TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH TRUSTOR AGREES TO ITS TERMS.

TRUSTOR:

THE SWEETWATER CHURCH OF THE VALLEY

By: [signature]
DAVID A. FOSTER, Associate Pastor

## CORPORATE ACKNOWLEDGMENT

STATE OF Arizona )
) ss
COUNTY OF Maricopa )

On this 27 day of Sept, 1999, before me, the undersigned Notary Public, personally appeared DAVID A. FOSTER, Associate Pastor of THE SWEETWATER CHURCH OF THE VALLEY, and known to me to be an authorized agent of THE SWEETWATER CHURCH OF THE VALLEY that executed the Deed of Trust and acknowledged the Deed of Trust to be the free and voluntary act and deed of the corporation, by authority of its Bylaws or by resolution of its board of directors, for the uses and purposes therein mentioned; and on oath stated that he or she is authorized to execute this Deed of Trust and in fact executed the Deed of Trust on behalf of the corporation.

By [signature]

Notary Public in and for the State of Arizona

My commission expires ______

OFFICIAL SEAL
TIFFANY L. LITTLEJOHN
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
My Comm. Expires 05-14-02

## REQUEST FOR FULL RECONVEYANCE

(To be used only when obligations have been paid in full)

To: ______, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

______

Date: ______ Beneficiary: ______

By: ______

Its: ______

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.25a (c) 1999 CFI ProServices, Inc. All rights reserved. [AZ-G01 E3.25 F3.24 P3.25 17532302.LN C33.OVL]

Exhibit A

The following described real property lying and situated in the county of MARICOPA, State of ARIZONA, to-wit:

TRACT I:

The East 150 feet of the North half of the South half of the Southeast quarter of the Southeast quarter of the Southeast quarter Of Section 9, Township 2 North, Range 2 East of the Gila and Salt River Base and Meridian, Maricopa County, Arizona.

AND

The North half of the South half of the Southeast quarter of the Northeast quarter of the Southeast quarter of Section 9, Township 3 North, Range 2 East of the Gila and Salt River Base and Meridian Maricopa County, Arizona.

Except the East 150 feet thereof.

TOGETHER WITH an easement for ingress/egress and public utilities Over the South 16 feet of said East 150 feet of the North half of The south half of the southeast quarter of the Northeast quarter of The Southeast quarter of Section 9, Township 3 North, Range 2 East Of the Gila and Salt River Base and Meridian, Maricopa County, Arizona.

TRACT II:

The South half of the South half of the Southeast quarter of the Northeast quarter of the Southeast quarter of Section 9, Township 3 North Range 2 East of the Gila and Salt River Base and Meridian, Maricopa County Arizona.

Tract III:

The North half of the North half of the southeast quarter of the Northeast quarter of the southeast quarter of Section 9, Township 3 North Range 2 East of the Gila and Salt River Base and Meridian, Maricopa County Arizona.

TRACT IV:

The south half of the North half of the Southeast quarter of the Northeast quarter of the southeast quarter of Section 9, Township 3 North Range 2 East of the Gila and Salt River Base and Meridian, Maricopa County Arizona.

# EXHIBIT "3"


# PROMISSORY NOTE

**Borrower:** The Sweetwater Church of the Valley, Inc. 14240 N. 43rd Avenue Glendale, AZ 85312

**Lender:** Bank One, N.A., with Columbus, Ohio as its main office Central Phoenix and West Valley Business Banking LPO 201 W. Indian School Road Phoenix, AZ 85013

**Principal Amount:** $95,161.56 **Date of Note:** June 3, 2003

**PROMISE TO PAY.** The Sweetwater Church of the Valley, Inc. ("Borrower") promises to pay to Bank One, N.A., with Columbus, Ohio as its main office ("Lender"), or order, in lawful money of the United States of America, the principal amount of Ninety-five Thousand One Hundred Sixty-one & 56/100 Dollars ($95,161.56), together with interest on the unpaid principal balance from June 3, 2003, until paid in full.

**PAYMENT.** Borrower will pay this loan in 60 payments of $1,931.50 each payment. Borrower's first payment is due June 25, 2003, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on May 25, 2008, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Payments and any other credits shall be allocated among principal, interest and fees at the discretion of Lender unless otherwise required by applicable law. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown on loan account statements sent to the Borrower. Lender's address shown in any payment coupon book provided to the Borrower, or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is the Prime Rate (the "Index"). "Prime Rate" shall mean the rate announced from time to time by Lender as its prime rate (which rate may not be the lowest, best or most favorable rate of interest which Lender may charge on loans to its customers). Each change in the rate to be charged on this Note will become effective without notice on the same day as the Index changes. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 3.750 percentage points over the Index. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**EFFECTIVE RATE.** Borrower agrees to an effective rate of interest that is the rate specified in this Note plus any additional rate resulting from any other charges in the nature of interest paid or to be paid in connection with this Note.

**PREPAYMENT.** Borrower may pay without fee all or a portion of the principal amount owed hereunder earlier than it is due. All prepayments shall be applied to the indebtedness in such order and manner as Lender may from time to time determine in its sole discretion. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Bank One Business Banking Loan Servicing Disputed Accounts Department, P.O. Box 901008 Fort Worth, TX 76101-2008.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $25.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon the occurrence of any Event of Default, including failure to pay upon final maturity, at Lender's option, and if permitted by applicable law, Lender may add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note (including any increased rate). Upon the occurrence of any Event of Default, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Note to 6.750 percentage points over the Index. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

Payment Default. Borrower fails to make any payment when due under this Note.

Other Defaults. Borrower fails to comply with or to pay or perform any other term, obligation, covenant or condition contained in this Note or in any of the Related Documents or to comply with or to pay or perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or between Borrower and any affiliate of BANK ONE CORPORATION.

Transfer of Assets. Borrower leases, sells, or otherwise conveys, or agrees to lease, sell, or otherwise convey, a material part of its assets or business outside of the ordinary course of business.

Defaults with Respect to Third Parties. Borrower fails to make any payment when due or fails to comply with or to perform any term, obligation, covenant or condition contained in any agreement between any other person and Borrower.

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Judgments or Decrees. One or more judgments or decrees shall be entered against the Borrower and such judgments or decrees shall not have been vacated, discharged, stayed or bonded pending appeal.

Insolvency. The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Creditor or Forfeiture Proceedings. Commencement of foreclosure, replevin, repossession, attachment, levy, execution, or forfeiture proceedings, whether by judicial proceeding, self-help, or any other method, by any creditor of Borrower, or by any governmental agency against the Collateral or any other assets of Borrower. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Failure to Comply with Laws. Borrower fails to comply with all applicable statutes, laws, ordinances and governmental rules, regulations and orders to which it is subject or which are applicable to its business, property and assets.

Change In Ownership. Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

Events Affecting Guarantor. Any of the preceding Events of Default occurs with respect to any guarantor of the Indebtedness as if the word "guarantor" were substituted for the word "Borrower" in such Event of Default, or any guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty.

Insecurity. Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon the occurrence of any Event of Default, Lender may declare the entire unpaid principal balance on this Note and the Indebtedness and all accrued unpaid interest immediately due, without notice (except that in the case of any Event of Default of the type described in the DEFAULT - Insolvency section herein, such acceleration shall be automatic and not at Lender's option), and then Borrower will pay that amount. Borrower shall be liable for any deficiency remaining after disposition of any collateral which Lender may choose to realize upon.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. However Borrower will only pay attorneys' fees of an attorney not Lender's salaried employee, to whom the matter is referred after Borrower's default. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

PROMISSORY NOTE
(Continued)

DISHONORED ITEM FEE. Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored

RIGHT OF SETOFF. Borrower grants to Lender a security interest in, as well as a right of setoff against, and hereby assigns, conveys, delivers, pledges and transfers to Lender, as security for repayment of the Indebtedness, all Borrower's right, title and interest in and to all Borrower's accounts (whether checking, savings, or some other account) with Lender or any subsidiary or affiliate of BANK ONE CORPORATION (each hereinafter referred to as a "Lender Affiliate") and all other obligations at any time owing by Lender or any Lender Affiliate to Borrower. This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which the grant of a security interest would be prohibited by law. Borrower authorizes Lender, without prior notice to Borrower and irrespective of (i) whether or not Lender has made any demand under this Note or the Related Documents or (ii) whether such Indebtedness is contingent, matured or unmatured, to the extent permitted by law, to collect, charge and/or setoff all sums owing on the Indebtedness against any and all such accounts and other obligations, and, at Lender's option, to administratively freeze or direct a Lender Affiliate to administratively freeze all such accounts and other obligations to allow Lender to protect Lender's security interest, collection, charge and setoff rights provided in this paragraph

COLLATERAL. Borrower acknowledges this Note is secured by security interest in and lien upon all collateral described in any Related Document

MODIFICATION. Any fees and charges and the time frames for imposition of such fees and charges set forth in this Note may be modified from time to time by Lender and shall not require the written acknowledgement or consent of Borrower. Any such modification shall be effective immediately upon any change made by Lender without prior written notice to Borrower

LATE CHARGES. In the "Late Charge" provision set forth above, the following language is hereby added after the word "greater": "up to the maximum amount of Two Hundred Fifty Dollars ($250.00) per late charge"

FINANCIAL STATEMENTS. Borrower shall furnish Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request

ENFORCEABILITY AND ORGANIZATION. Borrower is duly authorized to transact business in all states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Borrower's execution, delivery and performance of this Note and all the Related Documents have been duly authorized by all necessary action by Borrower. This Note and all the Related Documents constitute legal, valid and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms. If applicable, Borrower is an entity which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the state of its organization.

INFORMATION WAIVER. Lender may provide, without any limitation whatsoever, to any one or more purchasers, potential purchasers, or affiliates of BANK ONE CORPORATION, any information or knowledge Lender may have about the undersigned or about any matter relating to this document and the Related Documents, and the undersigned hereby waives any right to privacy the undersigned may have with respect to such matters

INDEBTEDNESS. The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents, together with interest on such amounts as provided in this Note, and all obligations, debts and liabilities, plus interest thereon, of Borrower or any one or more of them to Lender, as well as all claims by Lender against Borrower or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of this Note, whether voluntary or otherwise, whether due or not due, direct or indirect, absolute or contingent, liquidated or unliquidated and whether Borrower may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise and whether recovery upon such amounts may be or hereafter become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter become otherwise unenforceable; and further includes, without limitation, all principal, interest, and other amounts, costs and expenses payable under the Related Documents, whether executed by the Borrower or by any other person or entity, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Related Documents, together with interest thereon as provided in the Related Documents

RELATED DOCUMENTS. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now existing or hereafter arising, executed in connection with the Indebtedness

LIABILITIES FOR OBLIGATIONS UNDER RELATED DOCUMENTS. Borrower also promises to pay to Lender all of the Indebtedness. Borrower acknowledges that some of the Related Documents, pursuant to which Indebtedness may arise, may be executed only by persons or entities other than the Borrower

PURPOSE. Borrower agrees that no advances under this Note shall be used for personal, family or household purposes and that all advances hereunder shall be used solely for business, commercial, agricultural or other similar purposes

ARBITRATION. Undersigned and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this document or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Collateral or Property (as defined herein or in any Related Document) securing this document shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to applicable law. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral or Property securing this document, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral or Property securing this document, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this document shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision

JURY WAIVER. THE UNDERSIGNED AND LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG THE UNDERSIGNED AND LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS DOCUMENT, THE RELATED DOCUMENTS, OR ANY RELATIONSHIP BETWEEN OR AMONG THE UNDERSIGNED AND LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT TO LENDER TO PROVIDE THE FINANCING EVIDENCED BY THIS DOCUMENT AND THE RELATED DOCUMENTS

GOVERNING LAW. The Lender's loan production office for this transaction is located at the address and in the State (the "LPO State") indicated in the LPO address or the loan production office address on the first page of this document. This document will be governed by and interpreted in accordance with federal law and the laws of the LPO State, except for matters related to interest and the exportation of interest, which matters shall be governed by and interpreted in accordance with federal law (including, but not limited to, statutes, regulations, interpretations and opinions) and the laws of the State of Ohio. However, if there is ever a question about whether any provision of this document is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction which is evidenced by this document has been made in the State of Ohio.

VENUE. If there is a lawsuit, the undersigned agrees to submit to the jurisdiction of the courts of the county in the LPO State in which the Lender's loan production office is located

BORROWER'S ACKNOWLEDGEMENT AND AGREEMENT REGARDING AFFILIATE BANKS. Borrower may now or in the future have a borrowing relationship with another bank which is an affiliate of Bank One Corporation ("Bank Affiliate"). Lender and Borrower intend that the terms, covenants, conditions, warranties and obligations of Borrower in only one agreement in the nature of a loan or credit agreement ("Loan Agreement") be applicable to the borrowing relationship of Borrower and Lender and of Borrower and each such Bank Affiliate. Therefore, until Borrower executes a Loan Agreement with Lender, the Borrower agrees that the terms, covenants, conditions, warranties and obligations of Borrower contained in any Loan Agreement between Borrower and any Bank Affiliate shall continue in full force and effect until all Indebtedness payable pursuant to this Note is paid in full, notwithstanding any provision to the contrary set forth in the Loan Agreement with the Affiliated Bank and even in the event Borrower has satisfied all obligations, debts and liabilities of Borrower to such Bank Affiliate

RENEWAL AND EXTENSION. This Note is given in replacement, renewal and/or extension of, but not extinguishing the indebtedness evidenced by, the promissory note dated September 24, 1999 executed by Borrower to Bank One, Arizona, NA, predecessor in interest to Lender, in the original principal amount of $100,000.00, including previous renewals or modifications thereof, if any (the "Prior Note"), and is not a novation thereof. All interest evidenced by the Prior Note being replaced, renewed, and/or extended by this Note shall continue to be due and payable until paid. All Related Documents executed in relation to or as security for the Prior Note remain in full force and effect

## PROMISSORY NOTE
(Continued)

GENERAL PROVISIONS. If any part of this Note cannot be enforced, this fact will not affect the rest of this Note. It is agreed that any payment which would otherwise for any reason be deemed unlawful interest under applicable law shall be deemed to have been applied to the unpaid principal balance of this Note or to other Indebtedness. The unpaid balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. Unless specifically permitted otherwise by the terms and conditions of this Note, no alteration of or amendment to this Note shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment. Borrower agrees and consents to Lender's sale or transfer, whether now or later, of this Note, or the Related Documents or of any participation interest in this Note or Related Documents to one or more purchasers, whether related or unrelated to Lender. Borrower waives any and all notices of sale of this Note, the Related Documents or of any participation interests, as well as any notices of any repurchases of this Note, the Related Documents, or of any participation interests. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

THE SWEETWATER CHURCH OF THE VALLEY, INC

By: Glenn A. Foster
Glenn A. Foster, Pastor/President of The Sweetwater Church of the Valley, Inc.

By: Dorothy Foster
Dorothy Foster, Secretary of The Sweetwater Church of the Valley, Inc.